**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| **JOSEPH PHILLIP JENNINGS,** | ) | |
| **INEDA DURNIL JENNINGS,** | ) | **CASE NO. 05-73129** |
| | ) | |
| **Debtors.** | ) | **CHAPTER 13** |

_____

| | | |
|---|---|---|
| **OPAL CLIFTON,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **AP No. 06-07078** |
| | ) | |
| **JOSEPH PHILLIP JENNINGS,** | ) | |
| **INEDA DURNIL JENNINGS,** | ) | |
| **Defendants.** | ) | |

_____

<u>**MEMORANDUM DECISION**</u>

This adversary proceeding to object to the Debtors' discharge pursuant to 11

U.S.C. § 727(a)(2) and 11 U.S.C. § 727(a)(4) came before this Court on October 18, 2006 for a

hearing on the Plaintiff's Motion for Summary Judgment and the Defendants' Motion to

Dismiss.   At that hearing, the Motion for Summary Judgment was taken under advisement and

the Defendants' Motion to Dismiss was denied for reasons stated on the record.  Having now

reviewed the pleadings and heard arguments by counsel, the Court concludes that the Plaintiff's

Motion for Summary Judgment should be granted for the reasons stated below.


FINDINGS OF FACT

Mr. and Mrs. Jennings, the Debtors, filed a chapter 7 petition in this Court on

August 18, 2005.  At that time, the Debtors' schedules reported that they had $137,213.00 in

total assets of which only $2,108.00 would be available for distribution among unsecured and

under-secured creditors.[1]  The schedules reported that they had $216,578.53 in total liabilities of

which $61,504.34 consisted of general unsecured non-priority claims.  The schedules also

reported that the Debtors' real estate, valued at $117,800, was subject to a first deed of trust held

by Option One Mortgage Corporation in the amount of $93,000.00 and a second deed of trust in

favor of the Plaintiff, Opal Clifton, in the amount of $50,000.00.  Ms. Clifton's lien on the

Debtors' real estate was the result of a lawsuit filed by Ms. Clifton against Mr. Jennings in the

United States District Court for the Western District of Virginia.  Ms. Clifton's lawsuit was

ultimately settled by the Jennings agreeing to pay Ms. Clifton the sum of fifty thousand dollars

($50,000.00) and execution of a note, secured by the second deed of trust, in favor of Ms.

Clifton.

       Prior to filing their chapter 7 petition and at the time the Jennings entered into the

settlement agreement with Ms. Clifton, the Debtors owned a 1988 Prowler Fleetwood Travel

Trailer (hereafter "the Camping Trailer") which they had purchased in 1988 from a dealer in

North Carolina.  On or about April 4, 2005, shortly after entering into the settlement agreement,

the Jennings drove to Mount Airy, North Carolina and signed the title to the Camping Trailer to

their four sons for no consideration, apparently without having made any payments to Ms.

Clifton pursuant to the settlement agreement. Approximately four months after the Debtors

transferred the Camping Trailer, they filed their voluntary petition under chapter 7 of the

---

[1] The amount available for distribution to unsecured and under-secured creditors,
$2,108.00, was calculated based on the Debtors' amended Schedule C.  The Debtors' original
Schedule C exempted all of the Debtors' scheduled assets not securing a creditor's claim.  The
Debtors amended their Schedule C when it came to the attention of Debtors' counsel that the
Debtors had filed a previous homestead deed in 1989 and were not entitled to claim the
additional exemption of $2,108.00 claimed in their initial Schedule C.

2

Bankruptcy Code.  That petition was accompanied by the required Statement of Financial

Affairs, which requires a bankruptcy debtor to disclose all gifts and transfers made within one

year immediately preceding the commencement of the case.  Despite this requirement, the gift of

the Camping Trailer was not disclosed in the Debtors' bankruptcy filing. The Debtors also failed

to disclosed this transfer while testifying under oath at the "section 341" meeting of creditors on

September 12, 2005, even though the chapter 7 trustee specifically questioned the Debtors

regarding whether their schedules were accurate and whether they had transferred any assets

within the last year.

The Debtors' gratuitous transfer remained undisclosed until Ms. Clifton's counsel

sent a letter to the Debtors' attorney on December 2, 2005 inquiring about the ownership of the

Camping Trailer.  One week later, on December 9, 2005, counsel for the Debtors informed Ms.

Clifton's counsel that the Debtors had transferred the Camping Trailer to the Debtors' four sons

for no consideration in April 2005.  Thereafter, on December 29, 2005, the Debtors disclosed the

transfer to the Court by filing an Amended Statement of Financial Affairs that valued the

Camping Trailer at $3,656.00.  This disclosure was made to the Court 133 days after the Debtors

filed their chapter 7 petition and only after Ms. Clifton's counsel sent Debtors' counsel a letter

specifically inquiring about the Camping Trailer.

Prior to the inquiry concerning the ownership of the Camping Trailer, counsel for

Ms. Clifton had negotiated a $10,000.00 settlement with Debtors' counsel to settle Ms. Clifton's

asserted non-dischargeability cause of action against the Debtors.  At that time Debtors' counsel

had no knowledge of the factual predicate for the objection to her clients' discharge now before

the Court.  A motion to approve this settlement was filed with the Court on December 12, 2005.

3

At the hearing on January 4, 2006, Ms. Clifton's counsel clarified that the agreement only settled Ms. Clifton's objection to the discharge of her debt.  An order approving the settlement was entered on January 5, 2006.  The source of the settlement funds has been consistently represented to be a loan obtained by the Jennings' four sons, however the Court has no actual evidence before it to make any reliable finding of fact as to the source of such money.  Although neither the motion for approval nor the order approving the settlement agreement referenced any specific objection to discharge which Ms. Clifton might have against the Debtors, counsel for the Debtors has not disputed that the settlement agreement only resolved Ms. Clifton's potential §523 objection to the dischargeability of her claim against the Jennings.

Following the settlement of Ms. Clifton's potential § 523 objection, the Debtors moved to convert their case to chapter 13.  An order converting the Debtors' case to chapter 13 was entered on January 30, 2006.  After the conversion of their case the Debtors filed a chapter 13 plan and sought confirmation.  Ms. Clifton responded to the Debtors' plan by filing an objection to confirmation and a motion to dismiss the Debtors' chapter 13 case.  Ms. Clifton's objection to confirmation and motion to dismiss came before the Court on April 19, 2006. Following a hearing on these matters, the Court issued a memorandum decision and an order denying confirmation as well as the motion to dismiss, and converting the Debtors' chapter 13 case back to chapter 7.

In the Court's Memorandum Decision dated April 27, 2006 (Docket entry #87), it found that Mr. and Mrs. Jennings knowingly and intentionally failed to disclose the gift to their sons in their chapter 7 petition and in the subsequent "section 341" meeting of creditors because they believed that no one who would have any reason to know about it would make it known to

4

their creditors or the Court.  The Court also found that the creditors in this case would be better

served by re-conversion to chapter 7 rather than dismissal of the Debtors' case.  Among others

reasons, the Court noted that creditors would be better served by re-conversion because the

chapter 7 trustee might recover the value of the Camping Trailer and the Debtors' counsel

expressed the hope that the Debtors be allowed to continue in their bankruptcy case so that some

settlement might be reached with creditors in this case.

Following re-conversion to chapter 7, the chapter 7 trustee reached a settlement

agreement with the Debtors that compensated the estate for the gratuitous transfer of the

Camping Trailer and other assets of the estate.  The agreement provided that the Debtors would

pay the trustee $5,720 to compensate the estate for assets worth approximately $7,037.00.

These assets included the non-exempt equity in a  2000 Ford Taurus worth approximately

$1,025.00, the equity in a 2000 Ford Pickup truck worth approximately $1,856.00, certain

jewelry listed on the Debtors' schedules worth approximately $500.00, and the avoidable

transfer of the Debtors' Camping Trailer worth approximately $3,656.00.  The Court entered an

agreed order approving the proposed settlement agreement on September 14, 2006 based on the

chapter 7 trustee's recommendation and the fact that this settlement allowed the trustee to avoid

the costs and risks of recovering and liquidating these assets.  The agreed order included

provisions indicating that the trustee released the estate's claim on the subject property, but the

order did not resolve or settle the right of any creditor or other party in interest to pursue a cause

of action for denial of discharge against Debtors.

On July 5, 2006, Ms. Clifton commenced the present adversary proceeding

against the Debtors to deny them a discharge of their debts pursuant to 11 U.S.C. § 727(a)(2) and

11 U.S.C. § 727(a)(4).  Ms. Clifton alleged that the Debtors should be denied discharge because

they transferred property within one year of filing their petition with the intent to hinder,

defraud, or delay creditors and that the Debtors knowingly made false oaths in connection with

the case.  Ms. Clifton's Motion for Summary Judgment was filed with and argued before the

Court after the Debtors entered into the settlement agreement with the chapter 7 trustee to

compensate the estate for the value of the Camping Trailer and other assets of the estate.  Neither

the trustee nor any creditor other than Ms. Clifton has filed any objection to the Debtors'

discharge.


## CONCLUSIONS OF LAW

This Court has jurisdiction of this proceeding by virtue of the provisions of 28

U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District

Court on July 24, 1984.  An objection to discharge is a "core" bankruptcy matter pursuant to 28

U.S.C. § 157(b)(2)(J).

A motion for summary judgment made pursuant to Federal Rule of Civil

Procedure 56 is applicable to adversary proceedings in bankruptcy by virtue of Bankruptcy Rule

7056.  Rule 56 provides that such a motion can be granted only if the court is persuaded by the

evidence produced before it "that there is no genuine issue of material fact and that the moving

party is entitled to judgment as a matter of law."   Thus, in evaluating Ms. Clifton's motion, the

Court must determine whether there are any genuine issues of material fact. What follows is the

Court's analysis of each count of the Plaintiff's Complaint, the Court's determination as to

whether there is a genuine issue with respect to any material fact for each count, and a discussion

of Debtors' counsel's arguments in opposition to Plaintiff's Motion for Summary Judgment.

Count I of the Complaint alleges that the Court should deny discharge pursuant to 11 U.S.C. § 727(a)(2) because the Debtors gratuitously transferred the Camping Trailer to their four sons within one year of filing their petition with the intent to hinder, defraud, or delay creditors. The Court has previously ruled, and the Debtors have admitted, that they transferred the Camping Trailer to their four sons for no consideration less than one year before they filed bankruptcy in this Court. The Debtors have, however, denied that this transfer was done with intent to hinder, defraud, or delay creditors. Although the Debtors' gratuitous transfer to their sons raises a presumption of a fraudulent intent, the Debtors can rebut that presumption at trial by establishing that the transfer was made for some other purpose. *See In re Bateman*, 646 F.2nd 1220, 1223 (8th Cir. 1981)(setting forth the rebuttal presumption regarding fraudulent transfers). Because the Debtors have denied that the transfer was made with intent to hinder, defraud, or delay creditors and the Court has not previously ruled on the issue of fraudulent intent, the Court must, for the purposes of a motion summary judgment prior to trial, assume that the Debtors did not act with the intent to hinder, defraud, or delay creditors. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (holding that when ruling on a motion for summary judgment, courts must view the facts, and draw any inferences from those facts, in the light most favorable to the non-moving party); *See also Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (quoting *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979) for the proposition that all disputed facts must be resolved in favor of the non-moving party). As such, the Court denies Ms. Clifton's Motion for Summary Judgment with regard to Count I of her Complaint.

7

Count II of the Complaint alleges that the Court should deny discharge pursuant to

11 U.S.C. § 727(a)(4) because the Debtors knowingly and fraudulently made a false oath in

connection with their bankruptcy case.  For the Court to deny discharge under §727(a)(4), it

must find that the Debtors knowingly, and with the willful intent to defraud, made a false

statement under oath that relates to a material matter in the bankruptcy proceeding.  *Williamson

v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 251 (4th Cir. 1987).  The Debtors have admitted that

they failed to disclose the transfer of the Camping Trailer in their original bankruptcy schedules

and they certified under penalty of perjury that those schedules were true and correct.  The

Debtors have also admitted that they failed to disclose the transfer when later questioned under

oath by the chapter 7 trustee at the "section 431" meeting of creditors on September 12, 2005.

As set forth in this Court's Memorandum Decision dated April 27, 2006 (Docket entry #87), it

has found that the Debtors failed to disclose the gift to their sons because they believed that no

one who would have any reason to know about it would make it known to their creditors or the

Court.  Taken in the light most favorable to the Debtors, this prior finding of fact and the

Debtors' admissions are sufficient to establish that the Debtors made a false oath with the

fraudulent intent to hide their uncompensated transfer.[2]

The Court must now determine if that false oath relates to a material matter in the

bankruptcy proceeding.  *Williamson*, 828 F.2d at 251.  In *Williamson*, the Fourth Circuit ruled

---

[2] The Court notes that although its Memorandum Decision dated April 27, 2006 made no findings regarding whether the Debtors had fraudulent intent when they transferred the Camping Trailer to their four sons, the Memorandum Decision contained findings of fact regarding why the Debtors failed to disclose the transfer in their schedules and at the subsequent "section 341" meeting of creditors.

8

that debtor's false statements related to material matters because they concerned the existence

and disposition of the debtor's property. *Id.* at 252 (citing *In re Chalik*, 748 F.2d 616, 618 (11th

Cir. 1984) for the proposition that the subject matter of a false oath is material if it "bears a

relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets,

business dealings, or the existence and disposition of his property"). Courts have also ruled that

false oaths concerning supposedly worthless assets can be found to be material because creditors

are entitled to determine for themselves what might benefit them. *See for example In re Chalik*,

748 F.2d at 618 (denying discharge because the debtor made false oaths and failed to disclose

"worthless" assets); *In re Duncan*, 318 B.R. 648, 652 (Bankr. E.D. Va. 2004); *and In re*

*McFarland*, 197 B.R. 222, 224 (Bankr. E.D. Va. 1995). It is undisputed that the Debtors' oath in

this matter concerned the disposition of an unencumbered asset prior to the filing of a petition

which was initially represented to be a "no asset" bankruptcy. While the value of the Camping

Trailer may have been relatively small when compared to the Debtors' total liabilities, it

certainly was not nominal in relation to their non-exempt assets. A review of the Debtors'

amended schedules reveals that had the Debtors' assets that were neither claimed as exempt nor

securing the debts of creditors been liquidated, there would have been at most $2,108.00 to

distribute among unsecured and under-secured creditors. This small sum is in fact just over half

of the estimated value of the Camping Trailer which the Debtors transferred to their four sons for

no consideration. Considering these facts, the Court concludes there is no dispute of material

fact as to whether the Debtors' false oath relates to a material matter in their bankruptcy

proceeding. Having concluded that there is no issue of material fact with regard to Count II of

the complaint, the Court grants Ms. Clifton's Motion for Summary Judgment.

9

Although the pertinent facts discussed above have been either previously adjudicated by this Court or admitted by the Debtors in their Answer, counsel for the Debtors has argued that the Court should not grant the Plaintiff's Motion for Summary Judgment.  In furtherance of this position counsel has advanced three arguments.  Counsel first argues that the Debtors' eventual disclosure of the transfer of the Camping Trailer and subsequent settlement with the chapter 7 trustee shows the Debtors' good faith and that the Debtors have done all they can to correct their previous mistake.  While it is true that the Debtors eventually disclosed the transfer to the Court, the initial failure to disclose the transfer was not the result of an inadvertent error as is suggested by counsel's argument, nor did the Debtors voluntarily undertake to correct their mistake when given the opportunity to at the "section 341" meeting of creditors.  Had this been the case, counsel's argument may have had some merit.  *See for example In re Kestell*, 99 F.3d 146, 150 (4th Cir. 1996) (citing *In re Krich*, 97 B.R. 919, 924 (Bankr. N.D. Ill.1988) for the proposition that prompt voluntary disclosure of previously undisclosed assets can indicate good faith and willingness to comply with the bankruptcy process) and *In re Guttman*, 237 B.R. 643, 648 (Bankr. E. D. Mich. 1999)(holding that the debtor should not be denied discharge because the debtor voluntarily raised his initial failure to disclose an automobile at the 341 meeting). Given the Court's previous finding that Debtors only disclosed the transfer when confronted by the letter from Ms. Clifton's attorney and the Court's finding that the reason the Debtors did not disclose the transfer originally was that they believed that no one who would have any reason to know about the transfer would make it known to their creditors or the Court, the Court rejects counsel's argument.

Debtors' counsel's second argument is that the Debtors' undisclosed transfer of a

10

Camping Trailer worth $3,656.00 did not rise to such an egregious level as to warrant denial of discharge of $216,578 in debt. While denial of discharge may seem a harsh result under the circumstances, the Court is bound by the language of the Bankruptcy Code and its finding that there is no genuine issue of material fact as to whether the Debtors made a false oath regarding a material aspect of their case. *See United States, Dep't of Air Force v. Carolina Parachute Corp.*, 907 F.2d 1469, 1475 (4th Cir. 1990)(quoting *Official Committee of Equity Sec. Holders v. Mabey*, 832 F.2d 299, 302 (4th Cir. 1987), *cert. denied*, 485 U.S. 962, 99 L. Ed. 2d 428, 108 S. Ct. 1228 (1988) for the proposition that although bankruptcy courts are given broad equitable powers, those powers "are not a license for a court to disregard the clear language and meaning of the bankruptcy statutes and rules"). Furthermore, the test employed in objection to discharge proceedings is not the proportional size of the value of the property omitted to the aggregate amount of the claims against the debtor, but the materiality of the omission. In *In re Swift*, the Fifth Circuit held that the debtor "gambled and lost on the discharge of $2,000,000 in debt by engaging in 'cute' transactions that involved approximately $20,000 of his estate", the net effect of which was to dispose of debtor's only non-exempt assets. *In re Swift*, 3 F.3d 929, 930 (5th Cir. 1993). The Court also notes, as was discussed previously, that while the value of the Camping Trailer may pale in comparison to the total debt owed by the Jennings, it was quite significant when compared to the value of those assets available for distribution. Therefore, the Court rejects counsel's second argument.

   Third, Debtors' counsel has advanced the argument, raised after a *sua sponte* inquiry by this Court, that if the Court finds the Defendants' discharge must be denied, then the Court should either find that debt owing to Ms. Clifton should be discharged or, in the

11

alternative, order Ms. Clifton to turn over the $10,000 she received in settlement of a potential §

523 objection to either the chapter 7 trustee or the Debtors' four sons from whom the Debtors

have stated the settlement funds were obtained.  In support of this position counsel relies upon

the holding of *In re de Armond*, 240 B.R. 51 (Bankr. C. D. Cal. 1999) and the proposition that a

fundamental purpose of bankruptcy is to ensure equitable distribution among creditors.  *See*

*Kestell,* 99 F.3d  at 150 (stating that a major purpose of the bankruptcy process is equitable

distribution).  While counsel is correct that the bankruptcy process seeks to promote equitable

distribution, the Court finds that the facts of the present case are distinguishable from those

presented by *de Armond*.  In *de Armond*, the creditor, Bankruptcy Receivables Management,

simultaneously sought to dismiss a § 727 objection to discharge while settling a § 523 claim

against the debtor for $8,000.  *de Armond*, 240 B.R. at 53.  In that case, the court held that

because the creditor was effectively settling both its § 727 objection and its § 523 claim by

dismissing the § 727 objection while entering an $8,000 settlement agreement on the § 523

claim, the creditor had violated its fiduciary duties to the other creditors.  The court remedied the

creditor's violation of its fiduciary duties by ordering the creditor to turn over the proceeds of the

settlement to the trustee for distribution among all creditors.[3]  *See id.*  The present case is

distinguishable because Ms. Clifton did not settle her § 523 claim while simultaneously

attempting to dismiss her § 727 objection to discharge.  In fact Ms. Clifton never even filed her §

727 objection to discharge until after her § 523 claim had been settled.

        Counsel's reliance on the proposition that a fundamental purpose of bankruptcy is

---

[3] The Court expresses no opinion as to the appropriateness of the decision reached in *In re de Armond*, as that issue is not before the Court at this time.

12

to ensure equitable distribution among creditors is flawed because the $10,000 which Ms.

Clifton received to settled her potential § 523 claim was not part of the bankruptcy estate and

was never available for distribution among the Debtors' creditors.  In fact, the Debtors have

represented that these funds were procured from their fours sons in an effort resolve Ms.

Clifton's dischargeability claim against the Debtors.

       The Court notes, however, that it is troubled by Ms. Clifton's conduct which

appears to violate the spirit, although apparently not the precise terms, of the settlement she

reached with the Debtors in December of 2005.  While the spirit of that agreement may not be

honored by Ms. Clifton's subsequent actions, counsel for the Debtors has not asserted that the

settlement reached with Ms. Clifton was for anything beyond Ms. Clifton's potential § 523 cause

of action.  Furthermore, even though Ms. Clifton's subsequent actions render the § 523

settlement worthless to the Debtors in practical terms, other than as a credit against Ms. Clifton's

total claim, Debtors' counsel has not cited any authority to the effect that a creditor who receives

a significant § 523 settlement is thereafter estopped from later asserting a § 727 objection to

discharge, nor has the Court found any such authority.  While the Court has some reluctance to

grant a motion which has the effect of approving a creditor's conduct in obtaining a $10,000

settlement for her own benefit on the basis that she would give up her right to pursue a § 523

non-dischargeability complaint, and then filing an objection to the Debtors' discharge from any

of their debts, including the one debt subject to the §5 23 settlement, the Court's decision must

be based upon the actual provisions of the Bankruptcy Code rather than its own sense of what

seems equitable, fair and just.  While this outcome strikes the Court as somewhat distasteful, in

the final analysis it is the result of the Debtors' wholly voluntary action in transferring the legal

13

title to the Camping Trailer very soon after settling Ms. Clifton's pre-bankruptcy litigation and then initially failing to disclose such transfer to either their own attorney or this Court. Therefore, the Court must reject counsel's third and final argument.


CONCLUSION

The Court has found that the Debtors did make a false oath in their Statement of Financial Affairs and in the sworn testimony they provided at the first "section 341" meeting of creditors. These false oaths were made in the context of a petition which was indicative of a "no assets" bankruptcy proceeding and were material false statements. Given this finding, the Court concludes that it has no option other than to apply the applicable law, harsh though it may appear under the unique facts and circumstances presented in this case. As such, the Court by a separate order will grant the Plaintiff's Motion for Summary Judgment.

This 30th day of October, 2006.



_William F. Stone, Jr._
UNITED STATES BANKRUPTCY JUDGE